EDWARD M. WOLKOWITZ (SBN 68298)
KRIKOR J. MESHEFEJIAN (SBN 255030)
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: EMW@LNBYG.COM, KJM@LNBYG.COM

Attorneys for Elissa D. Miller,
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>SIMPLY HYBRID, LLC,<br><br><br><br>Debtor. | Case No. 2:21-bk-11697-BR<br><br>Chapter 7<br><br>**MOTION FOR ENTRY OF AN ORDER APPROVING: (1) SETTLEMENT AGREEMENT; AND (2) RELATED STIPULATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT**<br><br>**[No Hearing Required Pursuant to Local Bankruptcy Rule 9013-1(o)]** |

1

# **<u>TABLE OF CONTENTS</u>**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 5

I.     STATEMENT OF FACTS ........................................................................................ 5

     A.     Background Information. ........................................................................ 5

     B.     The Debtor's Assets. ............................................................................ 5

     C.     The Debtor's Liabilities. ....................................................................... 8

     D.     The Agreement. ..................................................................................... 8

     E.     The Stipulation. .................................................................................. 11

II.    THE AGREEMENT SHOULD BE APPROVED PURSUANT TO RULE
9019(a) OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE .................................................................................................... 12

     (a)     The probability of success in the litigation. .......................................... 13

     (b)     The difficulties, if any, to be encountered in the matter of
collection. ........................................................................................ 14

     (c)     The complexity of the litigation involved, and the expense,
inconvenience, and delay necessarily attending it................................... 15

     (d)     The paramount interest of the creditors and a proper deference to
their reasonable views. ....................................................................... 15

III.   CONCLUSION .................................................................................................... 15

DECLARATION OF ELISSA D. MILLER ............................................................... 17

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Blair,*
538 F.2d 849 (9th Cir. 1976) ............................................................................ 13

*Matter of Carla Leather, Inc.,*
44 B.R. 457 (Bankr. S.D. N.Y. 1984) .............................................................. 13

*In re Carson,*
82 B.R. 847 ....................................................................................................... 12

*In re Hydronic Enterprise, Inc.,*
58 B.R. 363 (Bankr. D. R.I. 1986) .................................................................... 12

*Knowles v. Putterbaugh (In re Hallet),*
33 B.R. 564 (Bankr. D. Me. 1983) .................................................................... 12

*In re Lee Way Holding Co.,*
120 B.R. 881 (Bankr. S.D. Ohio 1990) ............................................................ 13

*Martin v. Kane (In re A & C Properties),*
784 F.2d 1377 (9th Cir. 1986), *cert. denied* 479 U.S. 854 (1986) ............. 12, 13

*re Mobile Air Drilling Co., Inc.,*
53 B.R. 605 (Bankr. N.D. Ohio 1985) .............................................................. 12

*Newman v. Stein,*
464 F.2d 689 (2nd Cir. 1972) ........................................................................... 13

*United States v. Alaska National Bank (In re Walsh Constr., Inc.),*
669 F.2d 1325 (9th Cir. 1982) ...................................................................... 12, 13

*In re W.T. Grant & Co.,*
699 F.2d 599 (2nd Cir. 1983) ........................................................................... 13

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson),*
839 F.2d 610 (9th Cir. 1988) ............................................................................ 12

**Federal Statutes**

29 U.S.C. § 621, *et seq.* ................................................................................... 10

Age Discrimination in Employment Act of 1967 ............................................. 10

Code of Civil Procedure § 664.6 ...................................................................... 10

1    **Other Authorities**

2    Federal Rules of Bankruptcy Procedure Rule 9019(a)..................................................8, 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Elissa D. Miller (the "Trustee"), the chapter 7 trustee of the bankruptcy estate of Simply Hybrid, LLC dba Simply Rent a Car (the "Debtor") in the above-captioned bankruptcy case, hereby files this Motion, for entry of an order approving: (1) approving that certain "Settlement Agreement" (the "Agreement") attached as Exhibit 1 to the annexed Declaration of Elissa D. Miller ("Declaration"), by and between the Trustee, the Debtor, AAA Auto Leasing, LLC dba One Stop Classics ("AAA") (an affiliate of the Debtor), Ali Salman ("Salman") (the principal of the Debtor and AAA), Ottmar Benavides ("Benavides") (one of only a few, and the largest, creditor of this estate) and the Law Offices of Benjamin Davidson, P.C. ("LOBD") (Benavides' counsel and a claimant in this case); and (2) that certain "Stipulation Between Chapter 11 Trustee, Ottmar Benavides And Law Offices Of Benjamin Davidson" (the "Stipulation") attached as Exhibit 2 to the annexed Declaration, between the Trustee, Benavides and LOBD.

The Agreement is the product of a multiple-hour mediation conducted between the parties with Dennis McGoldrick, Esq. (a former panel trustee and formerly on the mediator panel) who agreed to conduct a mediation for the parties at no cost to the parties. The Agreement resolves the disputes pending between the Debtor, Salman, Benavides and LOBD, and the disputes pending between the Trustee, the Debtor, Salman and AAA. The Agreement provides that AAA and Salman, jointly and severally, will pay to the estate the total sum of $195,000 (increased to $210,000 if there is a default by Salman or AAA under the Agreement) in settlement and satisfaction of the estate's and Benavides' claims against Salman and AAA. The Trustee believes that under the circumstances described below, the terms of the Agreement are fair, reasonable, and beneficial to the Debtor's estate. The settlement funds are projected to provide to holders of allowed general unsecured claims a not insignificant distribution, potentially in the 20% range. Moreover, the amount due to the estate under the Agreement will be secured by a first priority, perfected lien against all assets of AAA and Salman, including an

inventory of classic vehicles in the possession of AAA which the Tustee contends had been fraudulent conveyed by the Debtor to AAA.  Under the Agreement, and conditioned upon AAA's and Salman's compliance with the terms of the Agreement, AAA and Salman will receive a release of all claims and causes of action of the estate, Benavides and LOBD against AAA and Salman.

The Stipulation is the product of discussion and negotiations between the Trustee and the estate's largest creditor, Benavides, and his counsel LOBD, pursuant to which Benavides' allowed claim will be fixed at/reduced to $350,000, and LOBD will withdraw its claim, and Benavides, who would be one of only two known creditors with allowed claims (the other potentially being the Franchise Tax Board asserting a claim less than $2,000) will receive distributions from the estate as set forth in the Stipulation.

The Trustee believes that the Agreement and Stipulation are in the best interest of the bankruptcy estate and creditors of the estate (indeed, the largest creditor with an allowed claim is a party to both the Agreement and Stipulation), because the Agreement and Stipulation resolve all of the disputes between the parties, and avoids the need for the Trustee to expend time and resources prosecuting claims against the Debtor's insiders and affiliates related to this bankruptcy case.

Absent the Agreement, the Trustee would be required to engage in protracted fraudulent conveyance and substantive consolidation litigation.  Such litigation would be complex and fact-intensive.  While the Trustee believes that she has excellent facts in this case to support any claims against AAA and Salman, the Trustee is also cognizant of the fact that there are no guarantees in litigation, and there is a substantial cost that would be incurred by the Trustee in connection with litigation and collection activities, as well as time spent engaging in litigation, that would reduce the net benefit to the estate of such litigation.  The Agreement bypasses many of those costs, delays and expenses, and requires AAA and Salman to immediately commence making both monthly ($2,500 per month) and quarterly payments (approximately $30,000 per

quarter) to the estate, over an 18-month period, with all such obligations secured by the assets of AAA and Salman.  Moreover, to the extent AAA or Salman default, the Trustee will still be able to pursue AAA and Salman in connection with any and all claims since the releases provided by the Trustee under the Agreement are conditioned upon AAA and Salman fulfilling their respective obligations under the Agreement.  From both a financial and practical perspective, the proposed compromise is in the best interests of this estate.

**WHEREFORE**, the Trustee requests that the Court enter an order:

1.  Granting this Motion;

2.  Entering an order in substantially the form attached hereto as Exhibit 3;

3.  Approving the Agreement

4.  Approving the Stipulation;

5.  Authorizing the Trustee to take any and all actions reasonably necessary to effectuate the terms of the Agreement and Stipulation;

6.  Directing the Debtor, AAA and Salman to cooperate with the Trustee in connection with the Trustee's implementation of the Agreement and execute any and all documents reasonably necessary to implement the terms of the Agreement; and

7.  Granting such further relief as the Court deems appropriate.

Dated: August 19, 2022

LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.


By: */s/ Krikor J. Meshefejian*
EDWARD M. WOLKOWITZ
KRIKOR J. MESHEFEJIAN
Attorneys for Elissa D. Miller,
Chapter 7 Trustee

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   <u>STATEMENT OF FACTS</u>

**A.**     <u>Background Information</u>.

1.     On March 3, 2021 (the "<u>Petition Date</u>"), Simply Hybrid, LLC (the "<u>Debtor</u>") filed a voluntary Chapter 7 bankruptcy case before the United States Bankruptcy Court for the Central District of California (the "<u>Bankruptcy Court</u>"), assigned Case No. 2:21-bk-11697-BR (the "<u>Bankruptcy Case</u>").

2.     The Trustee was appointed as chapter 7 trustee in the Bankruptcy Case.

3.     Prior to the Petition Date, the Debtor was in the car rental business. Prior to the Petition Date, the Debtor and Ali Salman ("<u>Salman</u>") were sued by Ottmar Benavides ("<u>Benavides</u>") for, among other things, discrimination, wrongful termination and wage and hour claims, in the Superior Court of California, County of Los Angeles, Case No. 18STCV01442 as to which the Debtor subsequently filed a cross-complaint alleging misrepresentation and listing Benavides as Cross-Defendant (the "<u>State Court Action</u>").

4.     The Debtor filed the Bankruptcy Case prior to commencement of the bench trial scheduled for March 15, 2021 in the State Court Action.

5.     The Trustee, through her investigation of the Debtor, Salman and AAA Auto Leasing, LLC dba One Stop Classics ("<u>AAA</u>"), contends, among other things, AAA is in possession of multiple vehicles that are either property of the Debtor's Bankruptcy Estate and/or were fraudulently transferred to AAA for no consideration.  The Debtor, AAA and Salman dispute the Trustee's claims.  The Trustee also believes that AAA owes the estate significant sums of money, as reflected in the books and records of AAA which were obtained by the Trustee via discovery under Rule 2004.

6.     On August 9, 2022, the Parties engaged in mediation with Dennis McGoldrick, Esq., and reached a settlement of their respective claims and disputes.

**B.**     <u>The Debtor's Assets</u>.

7.     The Debtor scheduled on its Schedules of Assets and Liabilities four vehicles: a

2015 Chevrolet Suburban, two 2015 Toyota Prius's, and a 2013 Ford Escape.  The Debtor turned these vehicles over to the Trustee and the Trustee sold these vehicles and is holding approximately $42,000 in cash from the sale of these vehicles net of costs.

8.    The Trustee, through her investigation of the Debtor and discovery under Rule 2004 of the Bankruptcy Code, learned that Salman also operates AAA, which is also a car rental business that operated at the exact same facilities as the Debtor, and that AAA claims an ownership interest in a number of potentially valuable classic cars, including, a 1957 Chevrolet Bel Air, a 1968 Buck LeSabre, a 1965 Lincoln Continental, a 1965 Ford Mustang, a 1973 Cadillac El Dorado, a 1969 Pontiac, a 1969 Mercury Monterey, a 1967 Pontiac Firebird, a 1970 Chevrolet Impala, a 1967 Cadillac DeVille, a 1964 1/2 Ford Mustang and a 1957 Ford Thunderbird.

9.    The Trustee also learned/believes that: (a) the above-mentioned classic cars appear be have been transferred from the Debtor to AAA for virtually no consideration, in 2018; (b) the Debtor's tax returns signed by Salman appear to disclose the transfer of a number of these classic cars to AAA for no consideration; (c) the Debtor appears to have included in its balance sheet as of December 2017 a number of classic cars that it purported to transfer to AAA for no consideration; (d) it appears that in October 2017, prior to the transfer of the classic cars to AAA, Salman sent on behalf of the Debtor to Benavides, correspondence in which Salman admits: (i) Salman introduced "a new line of Classic Cars" to the Debtor's already existing fleet (thereby confirming that the classic cars were introduced to the Debtor's fleet); and (ii) that the Debtor was experiencing financial difficulties (thereby confirming that the transfers for no consideration were made at a time when the Debtor was experiencing financial problems); (e) it appears that AAA did not use its own bank account for a period of time, and even after it established a bank account, it likely continued to use the Debtor's bank account to conduct

business; (f) it appears that AAA and the Debtor operated from the exact same location for a number of years, using the exact same employees and individuals to operate both businesses, using the same equipment to operate; (g) it appears Salman used the Debtor's "Turo" online booking account to rent the classic cars and AAA did not create or maintain its own online booking account, even after the Debtor's bankruptcy petition was filed; (h) it appears the Debtor paid for the expenses of the Debtor and AAA and there is no evidence that AAA repaid the Debtor for any of the expenses the Debtor paid on AAA's behalf; (i) it appears that, and possibly in connection with all of this, the Debtor included in its balance sheet as of December 2020 a receivable owed to the Debtor by AAA in the amount of at least $206,000, none of which has been paid back to the Debtor; and (j) AAA included in its general ledger, general trial balance and balance sheet a payable owed to the Debtor by AAA in the amount of at least $206,000.

10.    Based on the foregoing, the Trustee concluded that the estate has viable, extensive claims and causes of action against AAA and potentially Salman personally, coupled with extensive evidence supporting the Trustee's claims and causes of action. The Trustee also believes that substantive consolidation of the Debtor's estate and AAA would likely be necessary and appropriate.

11.    The Trustee also concluded that the cost of bringing such extensive claims and causes of action against AAA and potentially Salman personally would likely be in excess of $50,000 - $100,000 and would take a substantial amount of time to undertake, with no assurances of prevailing.

12.    The Trustee also concluded that the substantive consolidation of the Debtor's estate with AAA would also be costly, particularly if evidentiary hearings or a trial were required, and additional testimony and evidence were necessary to be obtained and presented to

the Court, in connection therewith.  Moreover, substantive consolidation would have increased the total number and amount of claims against the estate.

**C.    The Debtor's Liabilities.**

13.    The Debtor's largest alleged creditor is Benavides, who has filed a general unsecured claim against the Debtor's estate in the amount of $561,408.13.  Benavides' counsel LOBD, has filed a proof of claim in the amount of $88,209.22, but the Trustee understands that Benavides' claim amount is inclusive of LOBD's claim amount.  Under the Trustee's Stipulation with Benavides and LOBD, Benavides' claim will be allowed in the amount of $350,000 and LOBD will withdraw its claim.  Other than Benavides and Davison, the only other creditor to file a proof of claim is JP Morgan Chase Bank, N.A., in the amount of $22,117 (which claim has now been withdrawn by JP Morgan Chase Bank, N.A.) and the Franchise Tax Board, which asserts a claim in the total amount of approximately $1,700.  There is no secured debt asserted against the Debtor.  Thus, the only known creditors of the estate with allowed claims are Benavides and the Franchise Tax Board.

14.    Although the Debtor scheduled additional debt on its Schedules of Assets and Liabilities, including a purported debt owed to Salman, no creditor, including Salman, other than the ones listed above, have filed proofs of claim. *See* Exhibit 4 to annexed Declaration of Elissa D. Miller - Schedules of Assets and Liabilities, and Exhibit 5 - Claims Register.

**D.    The Agreement.**

15.    The Agreement is the product of an intensive multiple-hour mediation conducted on August 9, 2022 where the parties reached a settlement, documented the settlement, and executed the Agreement.  The salient terms of the Agreement are as follows:

    a.  <u>Court Approval</u>.  The Agreement and all of its terms, including releases, is expressly conditioned upon and subject to the entry of an Order of the Bankruptcy Court in the Bankruptcy Case approving the Agreement and all of the terms and conditions thereof pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Court Order</u>"), except that, within three (3) business days of execution of this

Agreement, pending approval of this Agreement by the Bankruptcy Court, AAA and Salman shall comply with the terms of Paragraph 2(a)(1) of the Agreement (payment of the Initial Payment).  The Trustee shall take all actions reasonably necessary to obtain the Court Order from the Bankruptcy Court at the earliest opportunity.  The Debtor, AAA and Salman each waives any right to appeal and/or collaterally attack the Court Order.

b.  Payments To The Trustee.  Salman and AAA shall jointly and severally pay to the Trustee the total sum of $195,000 (the "Settlement Sum"), as follows:

(1) Within three (3) business days of the Parties' execution of this Agreement, $10,000 (the "Initial Payment") which shall be returned to the transferor to the extent the Bankruptcy Court does not approve the Agreement;

(2) (i) $30,000 to be paid to the Trustee within three (3) months of the date of entry of the Court Order; (ii) $30,000 to be paid to the Trustee within six (6) months of the date of entry of the Court Order; (iii) $30,000 to be paid to the Trustee within nine (9) months of the date of entry of the Court Order; (iv) $30,000 to be paid to the Trustee within twelve (12) months of the date of entry of the Court Order; and (v) $20,000 to be paid to the Trustee within fifteen (15) months of the date of entry of the Court order (collectively, the "Quarterly Payments"); and

(3) in addition to the payments set forth above, $2,500 per month to be paid to Trustee in monthly installments for a period of eighteen months commencing on the first day of the first full month following entry of the Court Order.  Payments shall be made no later than the fifth (5th) business day of each month (the "Monthly Payments").

To the extent AAA or Salman default under the Agreement, including with respect to the timing of any of their respective payment obligations under the Agreement, the Settlement Sum shall be increased to $210,000 (the "Increased Settlement Sum") which Increased Settlement Sum shall be paid in full no later than twenty-four (24) months after entry of the Court Order, provided that the Increased Settlement Sum shall be reduced by any payments previously made under the Agreement.

c.  Security and Default Judgment.  The Settlement Sum and the Increased Settlement Sum (to the extent applicable) shall be secured by valid, perfected, first priority liens in favor of the Trustee against all of the assets of AAA and/or Salman (the "Assets"), including but not limited to the vehicles listed in Exhibit 1 to the Agreement and any other vehicles (the "Vehicles" and together with any other Asset, the "Collateral").  Salman and AAA shall within three (3) business days of entry of the Court Order, and to the Trustee's reasonable satisfaction, list the Trustee on title to all of the Vehicles as a lienholder, and the Trustee is authorized to take any and all action necessary to obtain and perfect the Trustee's liens against the Assets.  Salman and AAA shall cooperate with the Trustee in all respects with the Trustee's efforts to obtain, perfect and record liens on the Assets.  The Trustee shall be entitled to file a default judgment against AAA and Salman in the Increased Settlement Amount, and shall be entitled to receive interest and attorneys' fees and costs in connection therewith, to the extent of any default by AAA or Salman under this Agreement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

d.  <u>Investigation and Verification Rights of the Trustee</u>.  The Trustee and her agents shall be entitled to investigate the Assets, including, without limitation, the Vehicles. AAA and Salman shall provide to the Trustee access to all of the Assets and Vehicles in order for the Trustee to inspect the Assets and Vehicles and verify the information provided by AAA and Salman to the Trustee regarding the Vehicles.

e.  <u>Representations and Warranties by AAA and Salman</u>.  AAA and Salman represent and warrant that AAA holds title to the Vehicles free and clear of any and all liens or encumbrances as of the date of entry of the Court Order.

f.  <u>Releases</u>.  Paragraphs 6, 7 and 8 of the Agreement provides for certain, conditional general releases between and among certain of the Parties as set forth therein.

g.  <u>Dismissal and Enforcement of the State Court Action</u>.  With respect to the State Court Action, the Parties agree that Benavides's counsel shall file a Notice of Conditional Settlement with the Los Angeles Superior Court following the expiration of the revocation period, setting the date of dismissal as 30 days after the completion of the settlement payments set forth herein.  Within 5 business days after all settlement payments are made, Benavides's counsel shall file a Request for Dismissal with Prejudice of the Entire Action, including the Complaint and the Cross-Complaint.  However, if the Court directs dismissal of this action before such time, this Agreement may be enforced pursuant to Code of Civil Procedure section 664.6, and the Los Angeles County Superior Court shall retain jurisdiction of the Action pursuant to Code of Civil Procedure section 664.6. To the extent that the court does not retain jurisdiction over any disputes between the Parties, the Parties agree that the courts of the County of Los Angeles, state of California will be the exclusive place to resolve any disputes between the Parties. In any action to enforce or interpret any provision of this Agreement, the prevailing party of such enforcement action shall be entitled to receive from the losing party the recovery of reasonable attorney fees and costs.  The Parties agree that except as provided herein, there shall be no prevailing party to the State Court Action.

h.  <u>Release by Benavides of Age Discrimination in Employment Act Claims</u>.  Benavides agrees and expressly acknowledges that the Agreement includes a waiver and release of all claims that Benavides has or may have under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. Section 621, *et seq.* ("ADEA"). The following terms and conditions apply and are part of the waiver and release of ADEA claims under the Agreement:  The waiver and release of claims under the ADEA contained in the Agreement does not cover rights or claims that may arise after the date on which Benavides signs the Agreement.  Benavides is advised to consult an attorney before signing the Agreement.  Benavides is granted twenty-one (21) days after he is presented with the Agreement to decide whether or not to sign the Agreement.  Benavides will have the right to revoke the waiver and release of claims under the ADEA within seven (7) days of signing the Agreement, and the Agreement shall not become effective or enforceable until the eighth (8th) day after Benavides signs the Agreement.  Revocation can be made only by written notice of revocation via email to Simply Hybrid's attorney for the State Court Action, William D. Becker.  Benavides hereby acknowledges and agrees that he is knowingly and voluntarily waiving and releasing his rights and claims only in exchange for consideration in addition to anything of value to which he already is entitled.

10

**E.**  **The Stipulation.**

The salient terms of the Stipulation are as follows[1]:

1.      LOBD will withdraw its proof of claim with prejudice.

2.      The Benavides Claim will be deemed allowed on a final basis for all purposes in the amount of $350,000 (the "Allowed Benavides Claim"), and all parties in interest shall be precluded from objecting to Allowed Benavides Claim.

3.      If and when the Trustee receives a total of $100,000 of Settlement Funds under the Agreement, the Trustee shall reserve the sum of $20,000 from the Settlement Funds for the benefit of creditors of the estate other than the Trustee and her professionals.

4.      If and when the Trustee receives an additional $60,000 of Settlement Funds under the Agreement, the Trustee shall reserve the additional sum of $20,000 from the Settlement Funds for the benefit of creditors of the estate other than the Trustee and her professionals.  The Trustee shall make an interim distribution of the $40,000 reserve from the Settlement Funds to creditors on a pro rata basis.  It is anticipated that the Trustee will pay the Franchise Tax Board's claims (filed as Proof of Claim No. 1-2 and Proof of Claim No. 5-1) in full and distribute the remainder of the $40,000 to Benavides.  The Trustee makes no guarantees or representations regarding the allowed amounts of the Franchise Tax Board's claims and reserves all rights and remedies with respect thereto.

5.      If and when the Trustee receives an additional $25,000 of the Settlement Funds (meaning that the Trustee has collected a total of $185,000 of the Settlement Funds) the Trustee shall reserve the sum of $5,000 from the Settlement Funds for the benefit of creditors of the estate other than the Trustee and her professionals.

6.      Upon the payment in full of all Settlement Funds under the Agreement, the Trustee shall reserve the additional sum of $5,000 from the Settlement Funds for the benefit of creditors of the estate other than the Trustee and her professionals.

---

[1] Capitalized terms not otherwise defined in this section have the same meaning ascribed to such terms in the Stipulation.

7.    The Trustee shall make a second and final distribution from the Settlement Funds plus any other funds in the estate after payment of the costs of administration to creditors upon the Trustee's issuance of a final report.

8.    Nothing set forth in the Stipulation shall constitute a guarantee, warranty or representation by the Trustee of any recovery to any party in interest.

## II.    THE AGREEMENT SHOULD BE APPROVED PURSUANT TO RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

The authority granted a trustee to compromise a controversy or agree to a settlement is set forth in Bankruptcy Rule 9019(a), which provides in pertinent part that "[o]n motion by the trustee and after hearing on notice to creditors ..., the court may approve a compromise or settlement."  The decision of whether a compromise should be accepted or rejected lies within the sound discretion of the Court.  *In re Carson*, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987; *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr. D. R.I. 1986); I*n re Mobile Air Drilling Co., Inc.,* 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985); *Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bankr. D. Me. 1983).

The Court of Appeals for the Ninth Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements."  *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).   "The purpose of a compromise agreement is to allow the [debtor in possession] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."  *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. denied* 479 U.S. 854 (1986). Accordingly, in approving a settlement agreement, the Court need not conduct an exhaustive investigation of the claims sought to be compromised.  *See United States v. Alaska National Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).  Rather, it is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *See In re A & C Properties, supra*, 784 F.2d at 1381.

The Court of Appeals for the Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable:

    (a)    the probability of success in the litigation;

    (b)    the difficulties, if any, to be encountered in the matter of collection;

    (c)    the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and

    (d)    the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Properties, supra*, 784 F.2d at 1381 (the "A & C Factors").

A court should not substitute its own judgment for the judgment of the trustee. *Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D. N.Y. 1984). A court, in reviewing a proposed settlement, is not to decide the numerous questions of law and fact but rather to canvass the issues to determine whether the settlement falls below the lowest point in the range of reasonableness. *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2nd Cir. 1983), *accord*, *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972). The court should not conduct a "mini-trial" on the merits of the underlying cause of action. *Matter of Walsh Const., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Blair*, 538 F.2d 849 (9th Cir. 1976). "It is well established that compromises are favored in bankruptcy." *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990). The Trustee believes that the Agreement is reasonable, fair and equitable and is in the best interests of the estate. A review of the A & C Factors below supports the Court's approval of the Agreement.

    (a)    <u>The probability of success in the litigation</u>.

Pursuant to the Agreement, the claims and causes of action of the estate against AAA and Salman will be resolved. The estate will be entitled to receive the cash sum of at least $195,000 from AAA and Salman which amount will be secured by the Collateral. While the Trustee believes the estate has strong claims and causes of action backed by evidence, and while it is technically possible that the estate may achieve a superior result by litigating, the

outcome of such litigation is not guaranteed, and the cost is projected to be substantial. The Trustee concluded that the cost of bringing such extensive claims and causes of action against AAA and potentially Salman personally would likely be in excess of $50,000 - $100,000 and would take a substantial amount of time to undertake, with no assurances of prevailing. The Trustee also concluded that the substantive consolidation of the Debtor's estate with AAA would also be costly, particularly if evidentiary hearings or a trial were required, and additional testimony and evidence were necessary to be obtained and presented to the Court, in connection therewith. Moreover, substantive consolidation would have increased the total number and amount of claims against the estate. In light of these unknowns and risks, the Trustee believes that the probability of success in litigation does not outweigh the significant cost savings and benefits of the Agreement, which provides for immediate and ongoing cash payments to the estate without any litigation.

Additionally, pursuant to the Stipulation, LOBD will withdraw its proof of claim and Benavides will reduce his asserted claim by a significant amount. The Allowed Benavides Claim will be deemed allowed for all purposes. The Trustee submits that this is a fair result for Benavides who is the only creditor with a material allowed claim (the Franchise Tax Board asserts a claim less than $2,000). Moreover, the Stipulation reflects the Trustee's and Benavides' agreement and acknowledgment that the probability of success for either party is uncertain and it is likely that the cost of such litigation would outweigh any net benefit to either party.

(b)    The difficulties, if any, to be encountered in the matter of collection.

The Trustee believes this could be a significant factor in this case, particularly if the Trustee is unable to actually recover the Vehicles and is relegated to an unsecured monetary judgment against AAA and/or Salman. Under the Agreement, the Settlement Sum and Increased Settlement Sum, which are nearly identical to the amounts the Debtor's and AAA's books and records reflect is owed by AAA to the Debtor, will be secured by the Collateral, including the Vehicles.

1    (c)    <u>The complexity of the litigation involved, and the expense, inconvenience, and</u>
2        <u>delay necessarily attending it</u>.

3    The factual disputes between the Parties are highly contested and may require substantial

4 discovery and litigation to resolve, including, potentially, the involvement of experts and

5 forensic accountants.  The Trustee projects that the cost of resolving the disputes via litigation

6 will exceed tens of thousands of dollars, and could possibly reach or exceed $100,000 when

7 taking into account potential appeals.  The benefits to the estate could be very easily and very

8 quickly outweighed by the litigation costs.

9    (d)    <u>The paramount interest of the creditors and a proper deference to their reasonable</u>
10       <u>views</u>.

11    The paramount interest of the creditors of the estate is best served by the Agreement and

12 the Stipulation  Indeed, the largest creditor of the estate fully supports and is a Party to the

13 Agreement and the Stipulation.  The cash to be paid to the estate pursuant to the Agreement is

14 anticipated to provide for a meaningful recovery to creditors in this case, as set forth in the

15 Stipulation.

16                    **III.    <u>CONCLUSION</u>**

17    **WHEREFORE**, the Trustee requests that the Court enter an order:

18    8.  Granting this Motion;

19    9.  Entering an order in substantially the form attached hereto as Exhibit 3;

20    10. Approving the Agreement

21    11. Approving the Stipulation;

22    12. Authorizing the Trustee to take any and all actions reasonably necessary to effectuate

23        the terms of the Agreement and the Stipulation;

24    13. Directing the Debtor, AAA and Salman to cooperate with the Trustee in connection

25        with the Trustee's implementation of the Agreement and execute any and all

26        documents reasonably necessary to implement the terms of the Agreement; and

27

28

1    14. Granting such further relief as the Court deems appropriate.

2
Dated: August 19, 2022                                      LEVENE, NEALE, BENDER, YOO
3                                                           & GOLUBCHIK L.L.P.

4

5                                                  By: */s/ Krikor J. Meshefejian*
                                                        EDWARD M. WOLKOWITZ
6                                                       KRIKOR J. MESHEFEJIAN
                                                        Attorneys for Elissa D. Miller,
7                                                       Chapter 7 Trustee

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DECLARATION OF ELISSA D. MILLER</u>

I, Elissa D. Miller, hereby declare as follows:

1.      I am the Chapter 7 trustee appointed in the bankruptcy case of Simply Hybrid, LLC (the "<u>Debtor</u>").  I have personal knowledge of the facts set forth herein and if called to testify, would and could competently testify thereto.

2.      I am a partner of Greenspoon Marder LLP and I am a member of the Chapter 7 Panel of Bankruptcy Trustees appointed by the Office of the United States Trustee in the Central District of California.

3.      I make this Declaration in support of the Motion for the entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure approving: (a) the "Settlement Agreement" ("<u>Agreement</u>") attached as Exhibit 1 to this Declaration between me solely in my capacity as the Chapter 7 trustee of the bankruptcy estate of the Debtor, the Debtor, AAA Auto Leasing, LLC dba One Stop Classics ("<u>AAA</u>"), Ali Salman ("<u>Salman</u>"), Ottmar Benavides ("<u>Benavides</u>") and Law Offices of Benjamin Davidson ("<u>LOBD</u>"); and (b) the "Stipulation Between Chapter 11 Trustee, Ottmar Benavides And Law Offices Of Benjamin Davidson" ("<u>Stipulation</u>") attached as Exhibit 2 to this Declaration, between me solely in my capacity as the Chapter 7 trustee of the bankruptcy estate of the Debtor, Benavides and LOBD.

4.      On March 3, 2021, the Debtor filed a voluntary Chapter 7 bankruptcy case before the United States Bankruptcy Court for the Central District of California (the "<u>Bankruptcy Court</u>"), assigned Case No. 2:21-bk-11697-BR (the "<u>Bankruptcy Case</u>").

5.      I was appointed as Chapter 7 trustee in the Bankruptcy Case.

6.      Prior to the Petition Date, the Debtor was in the car rental business. Prior to the Petition Date, the Debtor and Ali Salman ("<u>Salman</u>") were sued by Ottmar Benavides ("<u>Benavides</u>") for, among other things, discrimination, wrongful termination and wage and hour claims, in the Superior Court of California, County of Los Angeles, Case No. 18STCV01442 as to which the Debtor subsequently filed a cross-complaint alleging misrepresentation and listing Benavides as Cross-Defendant (the "<u>State Court Action</u>").

7.    I understand the Debtor filed the Bankruptcy Case prior to commencement of the bench trial scheduled for March 15, 2021 in the State Court Action.

8.    Through my investigation of the Debtor, Salman and AAA, I concluded and contend, among other things, that AAA is in possession of multiple vehicles that are either property of the Debtor's bankruptcy estate and/or were fraudulently transferred to AAA for no consideration.  The Debtor, AAA and Salman dispute these claims.  I also believe that AAA owes the estate significant sums of money, as reflected in the books and records of AAA which were obtained by me via discovery under Rule 2004.

9.    On August 9, 2022, we engaged in mediation with Dennis McGoldrick, Esq., and reached a settlement of our respective claims and disputes.

10.    The Debtor scheduled on its Schedules of Assets and Liabilities four vehicles: a 2015 Chevrolet Suburban, two 2015 Toyota Prius's, and a 2013 Ford Escape.  The Debtor turned these vehicles over to me and I sold these vehicles and am holding approximately $42,000 in cash from the sale of these vehicles net of costs.

11.    Through my investigation of the Debtor and discovery under Rule 2004 of the Bankruptcy Code, I learned that Salman also operates AAA, which is also a car rental business that operated at the exact same facilities as the Debtor, and that AAA claims an ownership interest in a number of potentially valuable classic cars, including, a 1957 Chevrolet Bel Air, a 1968 Buck LeSabre, a 1965 Lincoln Continental, a 1965 Ford Mustang, a 1973 Cadillac El Dorado, a 1969 Pontiac, a 1969 Mercury Monterey, a 1967 Pontiac Firebird, a 1970 Chevrolet Impala, a 1967 Cadillac DeVille, a 1964 1/2 Ford Mustang and a 1957 Ford Thunderbird.

12.    I also learned/believe that: (a) the above-mentioned classic cars appear be have been transferred from the Debtor to AAA for virtually no consideration, in 2018; (b) the Debtor's tax returns signed by Salman appear to disclose the transfer of a number of these classic cars to AAA for no consideration; (c) the Debtor appears to have included in its balance sheet as of December 2017 a number of classic cars that it purported to transfer to AAA for no consideration; (d) it appears that in October 2017, prior to the transfer of the classic cars to AAA, Salman sent on behalf of the Debtor to Benavides, correspondence in which Salman

admits: (i) Salman introduced "a new line of Classic Cars" to the Debtor's already existing fleet (thereby confirming that the classic cars were introduced to the Debtor's fleet); and (ii) that the Debtor was experiencing financial difficulties (thereby confirming that the transfers for no consideration were made at a time when the Debtor was experiencing financial problems); (e) it appears that AAA did not use its own bank account for a period of time, and even after it established a bank account, it likely continued to use the Debtor's bank account to conduct business; (f)  it appears that AAA and the Debtor operated from the exact same location for a number of years, using the exact same employees and individuals to operate both businesses, using the same equipment to operate; (g) it appears Salman used the Debtor's "Turo" online booking account to rent the classic cars and AAA did not create or maintain its own online booking account, even after the Debtor's bankruptcy petition was filed; (h) it appears the Debtor paid for the expenses of the Debtor and AAA and there is no evidence that AAA repaid the Debtor for any of the expenses the Debtor paid on AAA's behalf; (i) it appears that, and possibly in connection with all of this, the Debtor included in its balance sheet as of December 2020 a receivable owed to the Debtor by AAA in the amount of at least $206,000, none of which has been paid back to the Debtor; and (j) AAA included in its general ledger, general trial balance and balance sheet a payable owed to the Debtor by AAA in the amount of at least $206,000.

13.     Based on the foregoing, I concluded that the estate has viable, extensive claims and causes of action against AAA and potentially Salman personally, coupled with extensive evidence supporting the estate's claims and causes of action.  I also believe that substantive consolidation of the Debtor's estate and AAA would likely be necessary and appropriate.

14.     I also concluded that the cost of bringing such extensive claims and causes of action against AAA and potentially Salman personally would likely be in excess of $50,000 - $100,000 and would take a substantial amount of time to undertake, with no assurances of prevailing.

15.     I also concluded that the substantive consolidation of the Debtor's estate with AAA would also be costly, particularly if evidentiary hearings or a trial were required, and

additional testimony and evidence were necessary to be obtained and presented to the Court, in connection therewith.   Moreover, substantive consolidation would have increased the total number and amount of claims against the estate.

16.   The Debtor's largest alleged creditor is Benavides, who has filed a general unsecured claim against the Debtor's estate in the amount of $561,408.13.   Benavides' counsel LOBD, has filed a proof of claim in the amount of $88,209.22, but I understand that Benavides' claim amount is inclusive of LOBD's claim amount.   Under the Stipulation, Benavides' claim will be allowed in the amount of $350,000 and LOBD will withdraw its claim.   Other than Benavides and Davison, the only other creditor to file a proof of claim is JP Morgan Chase Bank, N.A., in the amount of $22,117 (which claim has now been withdrawn), and the Franchise Tax Board, which asserts a claim in the total amount of approximately $1,700.   There is no secured debt asserted against the Debtor.   Thus, the only known creditors of the estate with allowed claims appear to be Benavides and the Franchise Tax Board.

17.   Although the Debtor scheduled additional debt on its Schedules of Assets and Liabilities, including a purported debt owed to Salman, no creditor, including Salman, other than the ones listed above, have filed proofs of claim. Attached to this Declaration as Exhibit 4 is a true and correct copy of the Debtor's Schedules of Assets and Liabilities and attached as Exhibit 5 to this Declaration is a true and correct copy of the Court's claim register.

16.   The Agreement is the product of an intensive multiple-hour mediation conducted on August 9, 2022 where the parties reached a settlement, documented the settlement, and executed the Agreement.

17.   The Stipulation is the product of discussion and negotiations between me and the estate's largest creditor, Benavides, and his counsel LOBD, pursuant to which Benavides' allowed claim will be fixed at/reduced to $350,000, and LOBD will withdraw its claim, and Benavides, who would be one of only two known creditors with allowed claims (the other potentially being the Franchise Tax Board asserting a claim less than $2,000) will receive distributions from the estate as set forth in the Stipulation.

18.      Pursuant to the Agreement, the claims and causes of action of the estate against AAA and Salman will be resolved.  The estate will be entitled to receive the cash sum of at least $195,000 from AAA and Salman which amount will be secured by the Collateral.  While I believe the estate has strong claims and causes of action backed by evidence, and while it is technically possible that the estate may achieve a superior result by litigating, the outcome of such litigation is not guaranteed, and the cost is projected to be substantial.  I concluded that the cost of bringing such extensive claims and causes of action against AAA and potentially Salman personally would likely be in excess of $50,000 - $100,000 and would take a substantial amount of time to undertake, with no assurances of prevailing.  I also concluded that the substantive consolidation of the Debtor's estate with AAA would also be costly, particularly if evidentiary hearings or a trial were required, and additional testimony and evidence were necessary to be obtained and presented to the Court, in connection therewith.  Moreover, substantive consolidation would have increased the total number and amount of claims against the estate.  In light of these unknowns and risks, I believe that the probability of success in litigation does not outweigh the significant cost savings and benefits of the Agreement, which provides for immediate and ongoing cash payments to the estate without any litigation.

19.      Additionally, pursuant to the Stipulation, LOBD will withdraw its proof of claim and Benavides will reduce his asserted claim by a significant amount.  The Allowed Benavides Claim will be deemed allowed for all purposes.  I submit that this is a fair result for Benavides who is the only creditor with a material allowed claim (the Franchise Tax Board asserts a claim less than $2,000).  Moreover, the Stipulation reflects agreement and acknowledgment of the parties to the Stipulation that the probability of success for either party is uncertain and it is likely that the cost of such litigation would outweigh any net benefit to either party.

20.     Absent the Agreement, I believe that collection matters could be a significant factor in this case, particularly if I am unable to actually recover the Vehicles and am relegated to an unsecured monetary judgment against AAA and/or Salman.  Under the Agreement, the Settlement Sum and Increased Settlement Sum, which are nearly identical to the amounts the Debtor's and AAA's books and records reflect is owed by AAA to the Debtor, will be secured by the Collateral, including the Vehicles.

21.     The factual disputes in this case are highly contested and may require substantial discovery and litigation to resolve, including, potentially, the involvement of experts and forensic accountants.  I project that the cost of resolving the disputes via litigation will exceed tens of thousands of dollars, and could possibly reach or exceed $100,000 when taking into account potential appeals.  The benefits to the estate could be very easily and very quickly outweighed by the litigation costs.

22.     I submit that the paramount interest of the creditors of the estate is best served by the Agreement and the Stipulation.  Indeed, the largest creditor of the estate fully supports and is a Party to the Agreement and the Stipulation.  The cash to be paid to the estate pursuant to the Agreement is anticipated to provide for a meaningful recovery to creditors in this case, as set forth in the Stipulation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this _18_ day of August 2022, at Los Angeles, California.

Elissa D. Miller

# EXHIBIT "1"

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made by and among Elissa D. Miller, Chapter 7 Trustee (the "Trustee") of the Bankruptcy Estate of Simply Hybrid, LLC (the "Debtor"), the Debtor, AAA Auto Leasing, LLC dba One Stop Classics ("AAA"), Ali Salman ("Salman"), Ottmar Benavides ("Benavides") and the Law Offices of Benjamin Davidson, P.C. ("LOBD"). At times below, any of the above are referred to generically as a "Party" and collectively referred to as the "Parties."

## RECITALS

A.    On March 3, 2021 (the "Petition Date"), the Debtor filed a voluntary Chapter 7 bankruptcy case before the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), assigned Case No. 2:21-bk-11697-BR (the "Bankruptcy Case").

B.    The Trustee was appointed as chapter 7 trustee in the Bankruptcy Case.

C.    Prior to the Petition Date, the Debtor was in the car rental business. Prior to the Petition Date, the Debtor and Salman were sued by Benavides for, among other things, discrimination, wrongful termination and wage and hour claims, in the Superior Court of California, County of Los Angeles, Case No. 18STCV01442 as to which Simply Hybrid LLC subsequently filed a cross-complaint alleging misrepresentation and listing Benavides as Cross-Defendant (the "State Court Action").

D.    The Debtor filed the Bankruptcy Case prior to commencement of the bench trial scheduled for March 15, 2021 in the State Court Action.

E.    The Trustee, through her investigation of the Debtor, Salman and AAA, contends, among other things, AAA is in possession of multiple vehicles that are either property of the Debtor's Bankruptcy Estate and/or were fraudulently transferred to AAA for no consideration. The Debtor, AAA and Salman dispute the Trustee's claims.

F.    On August 9, 2022, the Parties engaged in mediation with Dennis McGoldrick, Esq., and reached a settlement of their respective claims and disputes. This Agreement is entered into by the Parties to resolve their differences and to avoid the expenses and uncertainties of protracted litigation among them. The Parties now intend to settle and compromise their respective rights and obligations as set forth herein, each with respect to the other, in connection with the Bankruptcy Case and the State Court Action.

G.    All of the statements contained in Recitals A through F above, are recitations of fact such as those referred to and governed by California Evidence Code §622. Such statements are incorporated in this Agreement as if set forth in full below and are conclusively presumed to be true as between the parties hereto.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, and

conditions and upon acknowledgement of each of the Parties of the receipt of valuable consideration, the Parties herein agree as follows:

1.    Court Approval.    Notwithstanding any contrary language herein, this Agreement and all of its terms, including releases, is expressly conditioned upon and subject to the entry of an Order of the Bankruptcy Court in the Bankruptcy Case approving this Agreement and all of the terms and conditions hereof pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Court Order"), except that, within three (3) business days of execution of this Agreement, pending approval of this Agreement by the Bankruptcy Court, AAA and Salman shall comply with the terms of Paragraph 2(a)(1) below.  The Trustee shall take all actions reasonably necessary to obtain the Court Order from the Bankruptcy Court at the earliest opportunity.  The Debtor, AAA and Salman each waives any right to appeal and/or collaterally attack the Court Order.

2.    Payments To The Trustee.

(a)    Salman and AAA shall jointly and severally pay to the Trustee the total sum of $195,000 (the "Settlement Sum"), as follows:

(1) Within three (3) business days of the Parties' execution of this Agreement, $10,000 (the "Initial Payment") which shall be returned to the transferor to the extent the Bankruptcy Court does not approve this Agreement;

(2) (i) $30,000 to be paid to the Trustee within three (3) months of the date of entry of the Court Order; (ii) $30,000 to be paid to the Trustee within six (6) months of the date of entry of the Court Order; (iii) $30,000 to be paid to the Trustee within nine (9) months of the date of entry of the Court Order; (iv) $30,000 to be paid to the Trustee within twelve (12) months of the date of entry of the Court Order; and (v) $20,000 to be paid to the Trustee within fifteen (15) months of the date of entry of the Court order (collectively, the "Quarterly Payments"); and

(3) in addition to the payments set forth in Paragraph 2(a)(1) and (2), $2,500 per month to be paid to Trustee in monthly installments for a period of eighteen months commencing on the first day of the first full month following entry of the Court Order.  Payments shall be made no later than the fifth (5th) business day of each month (the "Monthly Payments").

(b)  To the extent AAA or Salman default under this Agreement, including with respect to the timing of any of their respective payment obligations under this Agreement, the Settlement Sum shall be increased to $210,000 (the "Increased Settlement Sum") which Increased Settlement Sum shall be paid in full no later than twenty-four (24) months after entry of the Court Order, provided that the Increased Settlement Sum shall be reduced by any payments previously made under this Agreement.

3.    Security and Default Judgment.  The Settlement Sum and the Increased Settlement Sum (to the extent applicable) shall be secured by valid, perfected, first priority liens in favor of the Trustee against all of the assets of AAA and/or Salman (the "Assets"), including but not limited to the vehicles listed in Exhibit 1 hereto and any other vehicles (the "Vehicles" and together with any other Asset, the "Collateral").   Salman and AAA shall within three (3) business days of entry of the Court Order, and to the Trustee's reasonable satisfaction, list the Trustee on title to all of the Vehicles as a lienholder, and the Trustee is hereby authorized to take any and all action necessary to obtain and perfect the Trustee's liens against the Assets.  Salman and AAA shall cooperate with the Trustee in all respects with the Trustee's efforts to obtain, perfect and record liens on the Assets. The Trustee shall be entitled to file a default judgment against AAA and Salman in the Increased Settlement Amount, and shall be entitled to receive interest and attorneys' fees and costs in connection therewith, to the extent of any default by AAA or Salman under this Agreement.

4.    Investigation and Verification Rights of the Trustee.  The Trustee and her agents shall be entitled to investigate the Assets, including, without limitation, the Vehicles.  AAA and Salman shall provide to the Trustee access to all of the Assets and Vehicles in order for the Trustee to inspect the Assets and Vehicles and verify the information provided by AAA and Salman to the Trustee regarding the Vehicles.

5.    Representations and Warranties by AAA and Salman.  AAA and Salman represent and warrant that AAA holds title to the Vehicles free and clear of any and all liens or encumbrances as of the date of entry of the Court Order.

6.    General Release of the Trustee and the Bankruptcy Estate.  Except for the obligations imposed upon the Trustee by this Agreement, and except for the proofs of claims filed by Benavides and LOBD in the bankruptcy Case, the Debtor, AAA, Salman, Benavides and LOBD on behalf of themselves and their respective insiders, affiliates, affiliated parent /subsidiary/sister companies, successors and assigns, and their respective members, shareholders, managers, officers, directors, heirs, as applicable to each of them, (collectively the "Non-Trustee Releasors") hereby generally release and discharge the Trustee and the Trustee's agents, attorneys, accountants and representatives from any and all claims, claims for relief, debts, demands, liabilities, obligations, suits, indebtedness, causes of action and rights, whether known or unknown, which the Non-Trustee Releasors, or any of them, now own or hold, or at any time heretofore owned or held, from the beginning of time until the Bankruptcy Court's approval of this Agreement including, without limitation, any and all matters arising out of or in any way resulting or relating to the Bankruptcy Case or the State Court Action.

7.    General Release of the Debtor, AAA and Salman.  Conditioned upon AAA's and Salman's compliance with this Agreement and fulfillment of the obligations imposed upon AAA and Salman pursuant to this Agreement, the Trustee, on behalf of the Bankruptcy Estate of the Debtor (collectively, the "Trustee Parties"), and LOBD and Benavides (the "Benavides Parties"), hereby generally releases and discharges AAA and Salman and their current officers, directors, attorneys and agents from any and all claims, claims for relief, debts, demands, liabilities, obligations, suits, indebtedness,

causes of action and rights, whether known or unknown, which the Trustee Parties and the Benavides Parties, respectively, now own or hold, or at any time heretofore owned or held, from the beginning of time until the entry of the Court Order, including, without limitation, any and all matters arising out of or in any way resulting or relating to the Bankruptcy Case or the State Court Action.  For the avoidance of doubt, the releases provided by the Trustee under this Agreement relate to the Bankruptcy Case only.

8.    <u>Waiver of Civil Code Section 1542</u>.  The release contained in Paragraphs 6 and 7, above, extends to all claims whether or not claimed or suspected by the Parties and constitutes a waiver of each and all the provisions of Section 1542 of the California Civil Code.  The Parties understand and recognize that they may discover or obtain information in the future pertaining to matters being released herein, which they did not know or have as of the date of this Agreement.  The releases set forth in paragraphs 6 and 7, above, are expressly intended to cover and include a release of any claims, which arise out of, relate to, are connected with, or are incidental to any such information, which may be discovered or obtained in the future.  As to the matters released in paragraphs 6 and 7, above, the Parties therefore expressly waive the provisions of Section 1542 of the Civil Code of the State of California (and any federal or state statute or common law principle to similar effect) which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Parties expressly agree that, notwithstanding the provisions of Civil Code Section 1542, the releases set forth in paragraphs 6 and 7, above, and this paragraph 8 shall be given full force and effect according to each and all of their expressed terms and provisions, including those relating to unknown and unspecified claims, demands and rights, lawsuits, or other causes of action.

9.    <u>Assumption of Risk</u>.  It is expressly understood and agreed by the Parties that the facts with respect to which this Agreement is given may hereinafter turn out to be other than or different from the facts in that connection now known or believed by them to be true, and they each expressly assume the risk of the facts turning out to be so different, and agree that this Agreement shall be in all respects effective and not subject to termination or rescission by reason of any difference in the facts.  The Parties understand and acknowledge the significance and the consequence of the specific waiver of unknown claims and hereby respectively assume full responsibility for any injuries, damages, losses or liabilities that any of them may hereinafter incur from the waiver of these unknown claims.

10.    <u>Representations and Warranties</u>.  Each Party represents and warrants to the other Parties that: (a) it has the full right, power and authority to execute and deliver this Agreement and perform its obligations hereunder; (b) this Agreement has been duly authorized, executed and delivered by it and constitutes its valid and binding obligation; (c) no consent of any party to any agreement, contract, mortgage, indenture or arrangement to which it is a party, or is bound, is required for its execution, delivery or performance of this Agreement; (d) it is the sole and lawful owner of all claims which it is releasing pursuant to the terms of this Agreement and that it has not assigned or transferred, or attempted to assign or transfer, to any person or entity all or any portion of such claims or any interest therein in any manner, including by way of subrogation or operation of law or otherwise.  Each Party hereby agrees to indemnify, defend and hold harmless the other Parties (individually and/or severally) from and against any and all liabilities, claims, demands, obligations, damages, costs, expenses and attorneys' fees as a result of a breach of such Party's foregoing representations and warranties.

11.    <u>General Provisions</u>.

a.    <u>No Admission</u>. Except as otherwise provided by this Agreement, this Agreement is a compromise of disputes among the Parties and should not be treated as an admission of liability by any Party for any purpose.

b.    <u>Entire Agreement</u>.  This Agreement sets forth in full the terms of agreement between the Parties and is intended as the full, complete and exclusive contract governing the subject matter hereof.  This Agreement supersedes all other discussions, promises, representations, warranties, agreements and understandings between the Parties with respect to the subject matter hereof.

c.    <u>Amendments</u>.  This Agreement may not be modified or amended except in a writing signed by the Party against whom enforcement of the modification or amendment is sought.

d.    <u>No Waiver</u>.  No waiver of any default, breach or failure to satisfy a condition by any Party shall be implied from any omission by the other Party to take action on account thereof on one or more occasions, and no express waiver shall affect any default other than that referenced therein, and any such waiver shall be operative only for the time and to the extent stated therein.  The consent or approval of a Party to any act of the other Party shall not be deemed to waive or render unnecessary the consent or approval of the consenting Party to any subsequent similar act.  No waiver of any kind or termination of this Agreement shall be effective unless set forth in a writing signed by the Parties.

e.    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the heirs, predecessors, assignors, successors and assigns of the Parties.

f.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of California without resort to



choice of law principles. The Bankruptcy Court presiding over the Bankruptcy Case shall have jurisdiction to resolve any dispute under this Agreement.

g.    Attorneys' Fees.  If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing Party or Parties shall be entitled to recover actual attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it may be entitled.

h.    Severability.  In the event of any invalidity or unenforceability of any provision of this Agreement, as determined by a final judgment of a court of competent jurisdiction, the remainder of this Agreement shall remain in full force and effect.

i.    Counterparts.  This Agreement may be executed in counterparts and all such executed counterparts shall constitute one Agreement which shall be binding upon all of the Parties, notwithstanding that all of the Parties are not signatories to the original or same counterpart.  For purposes of this Agreement, a faxed signature on a counterpart shall be fully binding as though it was an original signature.

j.    Interpretation.  All of the Parties acknowledge and agree that they have each been represented by independent counsel of their own choice throughout all of the negotiations which preceded the execution of this Agreement.  This Agreement shall be construed fairly as to all Parties and not in favor of or against any of the Parties, regardless of which of the Parties prepared this Agreement.    Accordingly, any uncertainty or ambiguity existing in this Agreement shall not be interpreted against any Party as a result of the manner of the preparation of this Agreement.  Thus, the Parties hereby waive Section 1654 of the California Civil Code, which reads:  IN CASES OF UNCERTAINTY NOT REMOVED BY THE PRECEDING RULES, THE LANGUAGE OF A CONTRACT SHOULD BE INTERPRETED MOST STRONGLY AGAINST THE PARTY WHO CAUSED THE UNCERTAINTY TO EXIST.

k.    Further Assurances.  Each of the Parties agrees that it will execute and deliver all such documents and instruments as may be necessary and appropriate to effectuate the terms hereof.

12.    Dismissal and Enforcement of the State Court Action.

With respect to the State Court Action, the Parties agree that Benavides's counsel shall file a Notice of Conditional Settlement with the Los Angeles Superior Court following the expiration of the revocation period, setting the date of dismissal as 30 days after the completion of the settlement payments set forth herein.  Within 5 business days after all settlement payments are made, Benavides's counsel shall file a Request for Dismissal with Prejudice of the Entire Action, including the Complaint and the Cross-Complaint.  However, if the Court directs dismissal of this action before such time, this Agreement may be enforced pursuant to Code of Civil Procedure section 664.6, and the Los Angeles County Superior Court shall retain jurisdiction of the Action

pursuant to Code of Civil Procedure section 664.6. To the extent that the court does not retain jurisdiction over any disputes between the Parties, the Parties agree that the courts of the County of Los Angeles, state of California will be the exclusive place to resolve any disputes between the Parties. In any action to enforce or interpret any provision of this Agreement, the prevailing party of such enforcement action shall be entitled to receive from the losing party the recovery of reasonable attorney fees and costs.  The Parties agree that except as provided herein, there shall be no prevailing party to the State Court Action.

      13.     Release by Benavides of Age Discrimination in Employment Act Claims.

      Benavides agrees and expressly acknowledges that this Agreement includes a waiver and release of all claims that Benavides has or may have under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. Section 621, *et seq*. ("ADEA").  The following terms and conditions apply and are part of the waiver and release of ADEA claims under this Agreement:  The waiver and release of claims under the ADEA contained in this Agreement does not cover rights or claims that may arise after the date on which Benavides signs this Agreement.  Benavides is advised to consult an attorney before signing this Agreement.  Benavides is granted twenty-one (21) days after she is presented with this Agreement to decide whether or not to sign this Agreement.  Benavides will have the right to revoke the waiver and release of claims under the ADEA within seven (7) days of signing this Agreement, and this Agreement shall not become effective or enforceable until the eighth (8th) day after Benavides signs the Agreement.  Revocation can be made only by written notice of revocation via email to Simply Hybrid's attorney for the State Court Action, William D. Becker.  Benavides hereby acknowledges and agrees that she is knowingly and voluntarily waiving and releasing her rights and claims only in exchange for consideration in addition to anything of value to which she already is entitled.

      IN WITNESS WHEREOF, the Parties have executed this Agreement on the respective dates set forth below.

                                 ELISSA D. MILLER, SOLELY IN HER CAPACITY AS CHAPTER 7 TRUSTEE OF THE BANKRUPTCY ESTATE OF SIMPLY HYBRID, LLC

DATED:  August 9, 2022

By: _____
Name: Elissa D. Miller

DATED:  August 9, 2022

ALI SALMAN

Ali Salman, individually

DATED:  August 9, 2022

AAA AUTO LEASING, LLC dba ONE
STOP CLASSICS

By:

Name:  Ali Salman
Title: Manager and Sole Member

DATED:  August 9, 2022

SIMPLY HYBRID, LLC

By:

Name:  Ali Salman
Title: Manager and Sole Member

DATED: August 9, 2022

LAW OFFICES OF BENJAMIN
DAVIDSON, P.C.

AUGUST 9, 022

By:

Name: Benjamin Davidson

OTTMAR BENAVIDES

Ottmar Benavides, individually

As to Form
August 1, 2022

Law Office of William Becher

William Becher
Wi D Becher

AS TO FORM
AUFUST 9, 2022

STEPHEN L. BURTON
ATTORNEY AT LAW

## **EXHIBIT 1**

[List of Vehicles]

1968 Buick LeSabre

1968 Buick LeSabre

1967 Cadillac DeVille

1957 Ford Thunderbird

1973 Cadillac El Dorado

1957 Chevrolet Bel-Air

1967 Pontiac Firebird

1957 Porsche Speedster

1964 ½ Ford Mustang

1965 Ford Mustang

1968 Mercury Monterey

1965 Lincoln Continental

1970 Chevrolet Impala

1969 Pontiac GTO

EXHIBIT "2"

1  EDWARD M. WOLKOWITZ (SBN 68298)
   KRIKOR J. MESHEFEJIAN (SBN 255030)
2  2818 La Cienega Avenue
   Los Angeles, CA 90034
3  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
4  Email: EMW@LNBYG.COM, KJM@LNBYG.COM
5
   Attorneys for Elissa D. Miller,
6  Chapter 7 Trustee
7
8              UNITED STATES BANKRUPTCY COURT
9               CENTRAL DISTRICT OF CALIFORNIA
                   LOS ANGELES DIVISION
10
   In re:                          Case No. 2:21-bk-11697-BR
11
   SIMPLY HYBRID, LLC,             Chapter 7
12
                                   STIPULATION BETWEEN CHAPTER
13                                 11 TRUSTEE, OTTMAR BENAVIDES
              Debtor.              AND LAW OFFICES OF BENJAMIN
14                                 DAVIDSON
15
16
17
18        Elissa D. Miller (the "Trustee"), the chapter 7 trustee of the bankruptcy estate of Simply

19 Hybrid, LLC dba Simply Rent a Car (the "Debtor") in the above-captioned bankruptcy case, on

20 the one hand, and Ottmar Benavides ("Benavides") and the Law Offices of Benjamin Davidson,

21 P.C. ("LODB") on the other hand, here stipulate as follows:

22                              RECITALS

23
24        A.     On March 3, 2021 (the "Petition Date"), Simply Hybrid, LLC (the "Debtor")

25 filed a voluntary Chapter 7 bankruptcy case before the United States Bankruptcy Court for the

26 Central District of California (the "Bankruptcy Court"), assigned Case No. 2:21-bk-11697-BR

27 (the "Bankruptcy Case").

28        B.     The Trustee was appointed as chapter 7 trustee in the Bankruptcy Case.

                                    1

C.    Prior to the Petition Date, the Debtor was in the car rental business. Prior to the Petition Date, the Debtor and Ali Salman were sued by Benavides for, among other things, discrimination, wrongful termination and wage and hour claims, in the Superior Court of California, County of Los Angeles, Case No. 18STCV01442 as to which the Debtor subsequently filed a cross-complaint alleging misrepresentation and listing Benavides as Cross-Defendant (the "State Court Action").

D.    The Debtor filed the Bankruptcy Case prior to commencement of the bench trial scheduled for March 15, 2021 in the State Court Action.

E.    On July 12, 2021, Benavides filed Proof of Claim No. 3-1, asserting a general unsecured claim in the amount of $561,408.13 (the "Benavides Claim").

On July 12, 2021, LOBD filed Proof of Claim No. 4-1, asserting a general unsecured claim in the amount of $88,209.22 (the "LOBD Claim").

F.    On August 9, 2022, the Trustee, Benavides, LOBD, the Debtors, Salman and AAA Auto Leasing, LLC dba One Stop Classics ("AAA") entered into that certain "Settlement Agreement" (the "Agreement") pursuant to which, among other things, Salman and AAA jointly and severally agreed to pay to the Trustee the sum set forth in the Agreement of at least $195,000 over the course of eighteen months (the "Settlement Funds").

G.    The Trustee projects based on the facts and information presently available, and assuming there will be no need to engage in collection activity or other litigation, and that no material other expenses arise, and that all settlement payments are timely made, that after the payment of the projected trustee's and other administrative fees and expenses, there should be approximately a total of $110,000 - $130,000 available for distribution to creditors, which given the Notice of Withdrawal of Proof of Claim #2-1 by JPMorgan Chase Bank, N.A. on August 15, 2022, and the stipulated dismissal of the LOBD Claim herein, is anticipated to be restricted to the Benavides Claim and the claims of the Franchise Tax Board. The Trustee does not guarantee any of these projections, which are intended to be provided for informational purposes only based on information currently available to the Trustee.

H.    The Trustee, Benavides and LOBD have further met and conferred, and engaged

in negotiations, regarding the administration of this Bankruptcy Case, the Benavides Claim, the LOBD Claim and the distribution of the Settlement Funds.

I.      Subject to Bankruptcy Court approval of the Agreement and this Stipulation, the Trustee, Benavides and LOBD hereby agree to the following:

**<u>AGREEMENT</u>**

1.      The LOBD Claim is hereby deemed withdrawn with prejudice.

2.      The Benavides Claim is hereby deemed allowed on a final basis for all purposes in the amount of $350,000 (the "<u>Allowed Benavides Claim</u>"), and all parties in interest shall be precluded from objecting to Allowed Benavides Claim.

3.      If and when the Trustee receives a total of $100,000 of Settlement Funds under the Agreement, the Trustee shall reserve the sum of $20,000 from the Settlement Funds for the benefit of creditors of the estate other than the Trustee and her professionals.

4.      If and when the Trustee receives an additional $60,000 of Settlement Funds under the Agreement, the Trustee shall reserve the additional sum of $20,000 from the Settlement Funds for the benefit of creditors of the estate other than the Trustee and her professionals.  The Trustee shall make an interim distribution of the $40,000 reserve from the Settlement Funds to creditors on a pro rata basis.  It is anticipated that the Trustee will pay the Franchise Tax Board's claims (filed as Proof of Claim No. 1-2 and Proof of Claim No. 5-1) in full and distribute the remainder of the $40,000 to Benavides.  The Trustee makes no guarantees or representations regarding the allowed amounts of the Franchise Tax Board's claims and reserves all rights and remedies with respect thereto.

5.      If and when the Trustee received an additional $25,000 of the Settlement Funds (meaning that the Trustee has collected a total of $185,000 of the Settlement Funds) the Trustee shall reserve the sum of $5,000 from the Settlement Funds for the benefit of creditors of the estate other than the Trustee and her professionals.

6.      Upon the payment in full of all Settlement Funds under the Agreement, the Trustee shall reserve the additional sum of $5,000 from the Settlement Funds for the benefit of creditors of the estate other than the Trustee and her professionals.

7.      The Trustee shall make a second and final distribution from the Settlement Funds plus any other funds in the estate after payment of the costs of administration to creditors upon the Trustee's issuance of a final report.

8.      Nothing set forth herein shall constitute a guarantee, warranty or representation by the Trustee of any recovery to any party in interest.

Dated: August 18, 2022                              LEVENE, NEALE, BENDER, YOO
                                                    & GOLUBCHIK L.L.P.


                                                    By: */s/  Krikor J. Meshefejian*
                                                        EDWARD M. WOLKOWITZ
                                                        KRIKOR J. MESHEFEJIAN
                                                        Attorneys for Elissa D. Miller,
                                                        Chapter 7 Trustee

Dated: August 18, 2022                              OTTMAR BENAVIDES


                                                    By: Ottmar Benavides (Aug 18, 2022 17:11 PDT)
                                                        Ottmar Benavides

Dated: August 18, 2022                              LAW OFFICES OF BENJAMIN
                                                    DAVIDSON, P.C.


                                                    By: _____
                                                        Benjamin Davidson

# EXHIBIT "3"

1 | EDWARD M. WOLKOWITZ (SBN 68298)
KRIKOR J. MESHEFEJIAN (SBN 255030)

2 | 2818 La Cienega Avenue
Los Angeles, CA 90034

3 | Telephone: (310) 229-1234
Facsimile: (310) 229-1244

4 | Email:  EMW@LNBYG.COM, KJM@LNBYG.COM

5 |

6 | Attorneys for Elissa D. Miller,
Chapter 7 Trustee

7 |

8 | **UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

9 | **LOS ANGELES DIVISION**

10 | In re:

11 | SIMPLY HYBRID, LLC,

12 |

13 | Debtor.

14 |

15 |

16 |

17 |

Case No. 2:21-bk-11697-BR

Chapter 7

**ORDER GRANTING MOTION FOR
ENTRY OF AN ORDER APPROVING:
(1) SETTLEMENT AGREEMENT;
AND (2) RELATED STIPULATION**

**[No Hearing Required Pursuant to Local
Bankruptcy Rule 9013-1(o)]**

18 |     The Court, having read and considered the Motion (Doc __) filed by Elissa D. Miller

19 | (the "Trustee"), the chapter 7 trustee of the bankruptcy estate of Simply Hybrid, LLC dba

20 | Simply Rent a Car (the "Debtor") in the above-captioned bankruptcy case, for entry of an order

21 | approving: (1) approving that certain "Settlement Agreement" (the "Agreement") attached as

22 |

23 | Exhibit 1 to the Motion, by and between the Trustee, the Debtor, AAA Auto Leasing, LLC dba

24 | One Stop Classics ("AAA") (an affiliate of the Debtor), Ali Salman ("Salman") (the principal of

25 | the Debtor and AAA), Ottmar Benavides ("Benavides") and the Law Offices of Benjamin

26 | Davidson, P.C. ("LOBD"); and (2) that certain "Stipulation Between Chapter 11 Trustee,

27 | Ottmar Benavides And Law Offices Of Benjamin Davidson" (the "Stipulation") attached as

28 | Exhibit 2 to the Motion, between the Trustee, Benavides and LOBD, with good and sufficient

1

cause appearing, notice of the Motion having been just and proper, pursuant to Rule 9019 of the

Federal Rules of Bankruptcy Procedure, orders as follows:

1.      The Motion is granted in its entirety;

2.      The Agreement is approved

3.      The Stipulation is approved.Approving the Agreement

4.      The Trustee is authorized to take any and all actions reasonably necessary to effectuate the terms of the Agreement and Stipulation;

5.      Pursuant to the terms of the Agreement, Salman and AAA shall jointly and severally pay to the Trustee the total sum of $195,000 (the "Settlement Sum"), as follows:

    a.  Within three (3) business days of the Parties' execution of this Agreement, $10,000 (the "Initial Payment") which shall be returned to the transferor to the extent the Bankruptcy Court does not approve the Agreement;

    b.  (i) $30,000 to be paid to the Trustee within three (3) months of the date of entry of this Order; (ii) $30,000 to be paid to the Trustee within six (6) months of the date of entry of this Order; (iii) $30,000 to be paid to the Trustee within nine (9) months of the date of entry of this Order; (iv) $30,000 to be paid to the Trustee within twelve (12) months of the date of entry of this Order; and (v) $20,000 to be paid to the Trustee within fifteen (15) months of the date of entry of this order (collectively, the "Quarterly Payments"); and

    c.  in addition to the payments set forth above, $2,500 per month to be paid to the Trustee in monthly installments for a period of eighteen months commencing on the first day of the first full month following entry of this Order, as set forth in the Agreement.

6.      To the extent AAA or Salman default under the Agreement, including with respect to the timing of any of their respective payment obligations under the Agreement, the Settlement Sum shall be increased to $210,000 (the "Increased Settlement Sum") which Increased Settlement Sum shall be paid in full no later than twenty-four (24) months after entry of this Order, provided that the Increased Settlement Sum shall be reduced by any payments previously made under the Agreement.  The Trustee shall be entitled to file a default judgment against AAA and Salman in this case in the Increased Settlement Amount, and shall be entitled to receive interest and attorneys' fees and costs in connection therewith, to the extent of any default by AAA or Salman under the Agreement.

7.      The Settlement Sum and the Increased Settlement Sum (to the extent applicable) shall be secured by valid, perfected, first priority liens in favor of the Trustee against all assets of AAA and/or Salman (the "Assets"), including but not limited to the vehicles listed in Exhibit 1 to the Agreement and any other vehicles (the "Vehicles" and together with any other Asset, the "Collateral").  Salman and AAA shall within three (3) business days of entry of this Order, and to the Trustee's reasonable satisfaction, list the Trustee on title to all of the Vehicles as a lienholder, and the Trustee is authorized to take any and all action necessary to obtain and perfect the Trustee's liens against the Assets.  Salman and AAA shall cooperate with the Trustee in all respects with the Trustee's efforts to obtain, perfect and record liens on the Assets.

8.      The Debtor, AAA and Salman shall cooperate with the Trustee in connection with the Trustee's implementation of the Agreement and execute any and all documents reasonably necessary to implement the terms of the Agreement, including, without limitation, any further security agreements, acknowledgements, and or filings, with respect to the liens and security interests granted to the Trustee in the Assets of AAA and/or Salman.

9.      The Trustee and her agents shall be entitled to investigate the Assets, including, without limitation, the Vehicles.  AAA and Salman shall provide to the Trustee access to all of the Assets and Vehicles in order for the Trustee to inspect the Assets and Vehicles and verify the information provided by AAA and Salman to the Trustee regarding the Vehicles.

**IT IS SO ORDERED.**

# # #

# EXHIBIT "4"

Fill in this information to identify the case:

Debtor name __Simply Hybrid, LLC dba Simply Rent A Car__

United States Bankruptcy Court for the: __CENTRAL DISTRICT OF CALIFORNIA__

Case number (if known) _____

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals                12/15

### Part 1:   Summary of Assets

1.   *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

    **1a. Real property:**
    Copy line 88 from *Schedule A/B*....................................................................    $      **0.00**

    **1b. Total personal property:**
    Copy line 91A from *Schedule A/B*.................................................................    $      **34,050.00**

    **1c. Total of all property:**
    Copy line 92 from *Schedule A/B*..................................................................    $      **34,050.00**

### Part 2:   Summary of Liabilities

2.   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*......................    $      **0.00**

3.   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

    **3a. Total claim amounts of priority unsecured claims:**
    Copy the total claims from Part 1 from line 5a of *Schedule E/F*.............................................    $      **0.00**

    **3b. Total amount of claims of nonpriority amount of unsecured claims:**
    Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*.............................    +$      **163,600.00**

4.   **Total liabilities** ................................................................
    Lines 2 + 3a + 3b          $      **163,600.00**

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Fill in this information to identify the case: |
| --- |

Debtor name  **Simply Hybrid, LLC dba Simply Rent A Car**

United States Bankruptcy Court for the:  CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☑ *Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)*
- ☑ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*
- ☑ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*
- ☑ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*
- ☑ *Schedule H: Codebtors (Official Form 206H)*
- ☑ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*
- ☐ *Amended Schedule*
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*
- ☐ Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   3/16/2021            x _____
                                          Signature of individual signing on behalf of debtor

                              **Ali Saman**
                              Printed name
                              Managing Member
                              _____
                              Position or relationship to debtor

<table>
<tr><td colspan="2"><b>Fill in this information to identify the case:</b></td></tr>
<tr><td>Debtor name</td><td><b>Simply Hybrid, LLC dba Simply Rent A Car</b></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>CENTRAL DISTRICT OF CALIFORNIA</td></tr>
<tr><td>Case number (if known)</td><td></td></tr>
</table>

☐ Check if this is an amended filing

# Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property          12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
■ Yes Fill in the information below.

All cash or cash equivalents owned or controlled by the debtor.

Current value of debtor's interest

**3.** Checking, savings, money market, or financial brokerage accounts *(Identify all)*
Name of institution (bank or brokerage firm)    Type of account    Last 4 digits of account number

| | | | | |
|---|---|---|---|---|
| 3.1. | Chase Bank Checking | Checking | 3926 | $0.00 |

**4.** Other cash equivalents *(Identify all)*

**5.** Total of Part 1.
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.    $0.00

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
■ Yes Fill in the information below.

**7.** Deposits, including security deposits and utility deposits
Description, including name of holder of deposit

| | | |
|---|---|---|
| 7.1. | Landlord | $0.00 |

| | | |
|---|---|---|
| 7.2. | Security Deposit  Landlord  Iman Design & Development, Inc. | $4,000.00 |

**8.** Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent
Description, including name of holder of prepayment

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

| Debtor | Simply Hybrid, LLC dba Simply Rent A Car | Case number *(If known)* _____ |
|---|---|---|
| | Name | |

**9.**    **Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.

$4,000.00

**Part 3:**    **Accounts receivable**

**10. Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
■ Yes Fill in the information below.

**11.**    **Accounts receivable**

11a. 90 days old or less: _____ 0.00  -  _____ 0.00  = ....  $0.00
                          face amount           doubtful or uncollectible accounts

**12.**    **Total of Part 3.**

Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

$0.00

**Part 4:**    **Investments**

**13. Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:**    **Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No.  Go to Part 6.
☐ Yes Fill in the information below.

**Part 6:**    **Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:**    **Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

**Part 8:**    **Machinery, equipment, and vehicles**

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.  Go to Part 9.
■ Yes Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

**47.**    **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

| Debtor | Simply Hybrid, LLC dba Simply Rent A Car | | Case number *(if known)* | |
|---|---|---|---|---|
| | Name | | | |

| | | | | |
|---|---|---|---|---|
| 47.1. | 2015 Chevy Suburban  Mileage 56644  Condition Good | $0.00 | Car Max | $20,000.00 |
| 47.2. | 2015 TOYOTA PRIUS BLACK IN COLOR MILEAGE 97926 CONDITION POOR TO FAIR  NEEDS BODY WORK | $0.00 | Car Max | $4,000.00 |
| 47.3. | 2015 Toyota Prius Gray in Color Mileage 99500  Condition Poor to Fair (Needs body work) | $0.00 | Car Max | $3,350.00 |
| 47.4. | 2013 Ford Escape Black in Color Mileage 85513  Condition Poor to fair (Needs body work) | $0.00 | Car Max | $2,700.00 |

48.  Watercraft, trailers, motors, and related accessories *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

49.  Aircraft and accessories

50.  Other machinery, fixtures, and equipment (excluding farm machinery and equipment)

51.  Total of Part 8.

Add lines 47 through 50.  Copy the total to line 87.

| $30,050.00 |
|---|

52.  Is a depreciation schedule available for any of the property listed in Part 8?
  ■ No
  ☐ Yes

53.  Has any of the property listed in Part 8 been appraised by a professional within the last year?
  ■ No
  ☐ Yes

**Part 9:    Real property**

54. Does the debtor own or lease any real property?

  ■ No.  Go to Part 10.
  ☐ Yes Fill in the information below.

**Part 10:    Intangibles and intellectual property**

59. Does the debtor have any interests in intangibles or intellectual property?

  ■ No.  Go to Part 11.
  ☐ Yes Fill in the information below.

**Part 11:    All other assets**

70. Does the debtor own any other assets that have not yet been reported on this form?
  Include all interests in executory contracts and unexpired leases not previously reported on this form.

  ■ No.  Go to Part 12.
  ☐ Yes Fill in the information below.

Official Form 206A/B                Schedule A/B Assets - Real and Personal Property                page 3

Debtor    **Simply Hybrid, LLC dba Simply Rent A Car**    Case number *(if known)* _____
          Name

## Part 12:    Summary

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $4,000.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $30,050.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*..........................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $34,050.00 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $34,050.00 |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com

**Fill in this information to identify the case:**

Debtor name __Simply Hybrid, LLC dba Simply Rent A Car__

United States Bankruptcy Court for the: __CENTRAL DISTRICT OF CALIFORNIA__

Case number (if known) _____

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims

12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Part 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:    List All Creditors with PRIORITY Unsecured Claims**

1.  Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).

■ No. Go to Part 2.

☐ Yes. Go to line 2.

**Part 2:    List All Creditors with NONPRIORITY Unsecured Claims**

3.  List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
out and attach the Additional Page of Part 2.

| | | Amount of claim |
|---|---|---|
| **3.1** Nonpriority creditor's name and mailing address<br>**Ali Saman**<br>**1824 Fairford Drive**<br>**Fullerton, CA 92833**<br><br>Date(s) debt was incurred _<br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: __LOANS TO LLC__<br><br>Is the claim subject to offset? ■ No ☐ Yes | **$120,000.00** |
| **3.2** Nonpriority creditor's name and mailing address<br>**Leona Jarvina**<br>**12422 Feather Drive**<br>**Mira Loma, CA 91752**<br><br>Date(s) debt was incurred _<br>Last 4 digits of account number __None__ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: _<br><br>Is the claim subject to offset? ■ No ☐ Yes | **$15,000.00** |
| **3.3** Nonpriority creditor's name and mailing address<br>**Ottmar Benavides c/o**<br>**Law Offices of Benjamin Davidson,**<br>**8383 Wilshire Blvd, Suite 830**<br>**Beverly Hills, CA 90211**<br><br>Date(s) debt was incurred _<br>Last 4 digits of account number __None__ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>■ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: __Lawsuit for Disability Discrimination__<br><br>Is the claim subject to offset? ■ No ☐ Yes | **Unknown** |
| **3.4** Nonpriority creditor's name and mailing address<br>**Tony Abraham**<br>**11538 Riverdale Dr**<br>**Toluca Lake, CA 91610**<br><br>Date(s) debt was incurred _<br>Last 4 digits of account number __None__ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim: _<br><br>Is the claim subject to offset? ■ No ☐ Yes | **$25,000.00** |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com            49637            Best Case Bankruptcy

| | |
|---|---|
| **Fill in this information to identify the case:** | |
| Debtor name | **Simply Hybrid, LLC dba Simply Rent A Car** |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | |

☐ Check if this is an amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible.

1. Do any creditors have claims secured by debtor's property?

■ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor | Simply Hybrid, LLC dba Simply Rent A Car | Case number (if known) | |
|---|---|---|---|
| | Name | | |

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | $3,600.00 |
|---|---|---|---|

**William Becker**
**Attorney at Law**
**2711 North Sepulveda Blvd Suite 236**
**Manhattan Beach, CA 90266**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred _

Basis for the claim: __Legal fees__

Last 4 digits of account number _

Is the claim subject to offset? ■ No ☐ Yes

---

## Part 3:    List Others to Be Notified About Unsecured Claims

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

---

## Part 4:    Total Amounts of the Priority and Nonpriority Unsecured Claims

5. Add the amounts of priority and nonpriority unsecured claims.

| | | Total of claim amounts |
|---|---|---|
| 5a. Total claims from Part 1 | 5a. $ | 0.00 |
| 5b. Total claims from Part 2 | 5b. + $ | 163,600.00 |
| 5c. Total of Parts 1 and 2
Lines 5a + 5b = 5c. | 5c. $ | 163,600.00 |

| Fill in this information to identify the case: |
| --- |

Debtor name    **Simply Hybrid, LLC dba Simply Rent A Car**

United States Bankruptcy Court for the:    CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)    _____

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases     12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.   **Does the debtor have any executory contracts or unexpired leases?**
   - ☑ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.
   - ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
| --- | --- |
| **2.1**   State what the contract or lease is for and the nature of the debtor's interest | |
|    State the term remaining | |
|    List the contract number of any government contract | |
| **2.2**   State what the contract or lease is for and the nature of the debtor's interest | |
|    State the term remaining | |
|    List the contract number of any government contract | |
| **2.3**   State what the contract or lease is for and the nature of the debtor's interest | |
|    State the term remaining | |
|    List the contract number of any government contract | |
| **2.4**   State what the contract or lease is for and the nature of the debtor's interest | |
|    State the term remaining | |
|    List the contract number of any government contract | |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

<table>
<tr><td colspan="2">**Fill in this information to identify the case:**</td></tr>
<tr><td>Debtor name</td><td>**Simply Hybrid, LLC dba Simply Rent A Car**</td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>CENTRAL DISTRICT OF CALIFORNIA</td></tr>
<tr><td>Case number (if known)</td><td></td></tr>
</table>

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

■ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☐ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G. Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.**

| | Column 1: Codebtor | | Column 2: Creditor | |
|---|---|---|---|---|

| | Name | Mailing Address | Name | Check all schedules that apply: |
|---|---|---|---|---|
| 2.1 | | Street / City  State  Zip Code | | ☐ D  ☐ E/F  ☐ G |
| 2.2 | | Street / City  State  Zip Code | | ☐ D  ☐ E/F  ☐ G |
| 2.3 | | Street / City  State  Zip Code | | ☐ D  ☐ E/F  ☐ G |
| 2.4 | | Street / City  State  Zip Code | | ☐ D  ☐ E/F  ☐ G |

# EXHIBIT "5"

Case 2:21-bk-11697-BR   Doc 65   Filed 08/19/22   Entered 08/19/22 11:39:06   Desc
Main Document    Page 59 of 62

# Central District of California
# Claims Register

### 2:21-bk-11697-BR Simply Hybrid, LLC

| | | |
|---|---|---|
| **Judge:** Barry Russell | **Chapter:** 7 | |
| **Office:** Los Angeles | **Last Date to file claims:** 07/12/2021 | |
| **Trustee:** Elissa Miller (TR) | **Last Date to file (Govt):** 08/30/2021 | |

| Creditor: (40821650)<br>FRANCHISE TAX BOARD<br>BANKRUPTCY SECTION MS A340<br>PO BOX 2952<br>SACRAMENTO CA 95812-2952 | **Claim No: 1**<br>*Original Filed*<br>*Date*: 06/09/2021<br>*Original Entered*<br>*Date*: 06/09/2021<br>*Last Amendment*<br>*Filed*: 04/29/2022<br>*Last Amendment*<br>*Entered*: 04/29/2022 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Anthony Franklin<br>*Modified:* |
|---|---|---|

Amount claimed: $814.39

Priority claimed: $814.39

*History:*

| | | |
|---|---|---|
| Details | 1-1 | 06/09/2021 Claim #1 filed by FRANCHISE TAX BOARD, Amount claimed: $1637.73 (Nguyen, Kim Tho) |
| Details | 1-2 | 04/29/2022 Amended Claim #1 filed by FRANCHISE TAX BOARD, Amount claimed: $814.39 (Franklin, Anthony) |

*Description:* (1-1) Claim Filed
(1-2) Claim Filed

*Remarks:*

| Creditor: (40841557)<br>JPMorgan Chase Bank, N.A.<br>c/o Mark A. Jarman<br>P.O. Box 29550 Mail Code AZ1-42E3<br>Phoenix, AZ 85038 | **Claim No: 2**<br>*Original Filed*<br>*Date*: 06/24/2021<br>*Original Entered*<br>*Date*: 06/24/2021 | *Status:* Withdraw 64<br>*Filed by:* CR<br>*Entered by:* Josephine E Salmon<br>*Modified:* |
|---|---|---|

Amount claimed: $22117.00

Secured claimed: $0.00

*History:*

| | | |
|---|---|---|
| Details | 2-1 | 06/24/2021 Claim #2 filed by JPMorgan Chase Bank, N.A., Amount claimed: $22117.00 (Salmon, Josephine) |
| | 64 | 08/15/2022 Withdrawal of Claim(s): 2 *with certificate of service* Filed by Creditor JPMORGAN CHASE BANK, N.A.. (Salmon, Josephine) Status: Withdraw |

*Description:* (2-1) 1005

*Remarks:*

| Creditor: (40681594) | **Claim No: 3** | *Status:* |
|---|---|---|

*History:*

| | | |
|---|---|---|
| Details | 3-1 | 07/12/2021 Claim #3 filed by Ottmar Benavides c/o, Amount claimed: $561408.13 (AUTP) |

*Description:*

*Remarks:*

Ottmar Benavides c/o
Law Offices of Benjamin Davidson,
8383 Wilshire Blvd, Suite 830
Beverly Hills, CA 90211

*Original Filed Date*: 07/12/2021
*Original Entered Date*: 07/12/2021

*Filed by:* CR
*Entered by:* AUTP
*Modified:*

Amount claimed: $561408.13

*History:*

| Details | 3-1 | 07/12/2021 Claim #3 filed by Ottmar Benavides c/o, Amount claimed: $561408.13 (AUTP) |

*Description:*

*Remarks:*

---

*Creditor:*    (40863907)
Law Offices of Benjamin Davidson, P.C.
8383 Wilshire Blvd. #830
8383 Wilshire Blvd. #830
Beverly Hills, CA 90211

**Claim No: 4**
*Original Filed Date*: 07/12/2021
*Original Entered Date*: 07/12/2021

*Status:*
*Filed by:* CR
*Entered by:* AUTP
*Modified:*

Amount claimed: $88209.22

*History:*

| Details | 4-1 | 07/12/2021 Claim #4 filed by Law Offices of Benjamin Davidson, P.C., Amount claimed: $88209.22 (AUTP) |

*Description:*

*Remarks:*

---

*Creditor:*    (41166462)
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

**Claim No: 5**
*Original Filed Date*: 04/29/2022
*Original Entered Date*: 04/29/2022

*Status:*
*Filed by:* CR
*Entered by:* Anthony Franklin
*Modified:*

Amount claimed: $821.97
Priority  claimed: $821.97

*History:*

| Details | 5-1 | 04/29/2022 Claim #5 filed by FRANCHISE TAX BOARD, Amount claimed: $821.97 (Franklin, Anthony) |

*Description:* (5-1) Claim Filed

*Remarks:*

---

## Claims Register Summary

**Case Name:** Simply Hybrid, LLC
**Case Number:** 2:21-bk-11697-BR
**Chapter:** 7
**Date Filed:** 03/03/2021
**Total Number Of Claims:** 5

| | |
|---|---|
| **Total Amount Claimed*** | $673370.71 |
| **Total Amount Allowed*** | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

|  | Claimed | Allowed |
|---|---|---|
| **Secured** | $0.00 | |
| **Priority** | $1636.36 | |
| **Administrative** | | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/18/2022 15:21:30 | | | |
| **PACER Login:** | lnbyb1700 | **Client Code:** | 9430 |
| **Description:** | Claims Register | **Search Criteria:** | 2:21-bk-11697-BR Filed or Entered From: 7/29/2000 Filed or Entered To: 1/1/2023 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2818 La Cienega Avenue, Los Angeles, California 9003

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR ENTRY OF AN ORDER APPROVING: (1) SETTLEMENT AGREEMENT; AND (2) RELATED STIPULATION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ELISSA D. MILLER IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **_August 19, 2022_**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Stephen L Burton    steveburtonlaw@aol.com, ellie.burtonlaw@gmail.com**
- **Benjamin Davidson    bdavidson@bendavidsonlaw.com**
- **Joseph C Delmotte    ecfcacb@aldridgepite.com, JCD@ecf.inforuptcy.com;jdelmotte@aldridgepite.com**
- **Krikor J Meshefejian    kjm@lnbyg.com**
- **Elissa Miller (TR)    CA71@ecfcbis.com,**
  **MillerTrustee@gmlaw.com;C124@ecfcbis.com;cheryl.caldwell@gmlaw.com;cheryl.caldwell@ecf.courtdrive.com**
- **Josephine E Salmon    ecfcacb@aldridgepite.com, JES@ecf.inforuptcy.com;jsalmon@aldridgepite.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Edward M Wolkowitz    emw@lnbyg.com**

**2.  SERVED BY UNITED STATES MAIL**: On (*date*) **_August 19, 2022_**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor
Simply Hybrid, LLC
150 W Ivy Avenue
Inglewood, CA 90302

Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012
☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_August 19, 2022_**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 19, 2022 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.